IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

------------------------------------------------------x
                                      :
GREAT AMERICAN INSURANCE COMPANY    :      3:10 CV 1669 (JGM)
OF NY a/s/o The Connecticut Association      :
for the Performing Arts, Inc.,                      :
                                      :
v.                                         :
                                      :
SUMMIT EXTERIOR WORKS, LLC              :      DATE: FEBRUARY 13, 2012
                                      :
------------------------------------------------------x

<u>RULING ON MOTION IN LIMINE  TO PRECLUDE DEFENDANT FROM INTRODUCING ANY
EVIDENCE CONTRADICTING ITS TESTIMONY THAT THE EFIS WALL DETACHED ON
OCTOBER 24, 2008, AND DEFENDANT'S EXPERT, THOMAS OLAM, FROM TESTIFYING TO
POTENTIAL SOURCES OF WATER INFILTRATION, ALONG WITH ANY OTHER OPINIONS
AND OBSERVATIONS NOT DISCLOSED IN HIS EXPERT REPORT</u>

On October 22, 2010, plaintiff, Great American Insurance Company of New York, the property insurer for The Connecticut Association of the Performing Arts, Inc., commenced this subrogation action against defendant Summit Exterior Works, LLC, arising out of roof and/or gutter demolition and construction work on the building that houses the Shubert Theater in New Haven, Connecticut.  (Dkt. #1).  Plaintiff's Amended Complaint was filed on February 6, 2012.  (Dkt. #76; <u>see also</u> Dkt. ##72, 75).

On December 19, 2011, the parties consented to trial before this Magistrate Judge. (Dkt. #56).  Jury selection is scheduled for February 27, 2012, with trial to begin immediately thereafter. (Dkts. ##57, 62).

On January 23, 2012, plaintiff filed its Motion <u>In Limine</u> to Preclude Defendant from Introducing Any Evidence Contradicting Its Testimony that the EFIS Wall Detached on October 24, 2008, and Defendant's Expert, Thomas Olam, from Testifying to Potential Sources of Water Infiltration, Along with Any Other Opinions and Observations Not Disclosed

in his Expert Report and brief in support (Dkts. ##67-68)[1], as to which defendant filed its brief in opposition one week later (Dkt. #71)[2]; plaintiff filed its reply brief on February 2, 2012 (Dkt. #73).[3]

For the reasons stated below, plaintiff's Motion In Limine (Dkt. #67) is granted in large part.

## I.  DISCUSSION

In this motion, plaintiff seeks to preclude defendant from: (1) arguing, claiming or introducing testimony or other evidence that the EFIS wall assembly common to Roofs 4 and 6 at the Shubert Theater detached from Roof 6 on any day other than October 24, 2008; and (2) allowing its expert, Thomas Olam, from testifying to potential sources of water infiltration, along with any other opinions and observations not disclosed in his expert report.  (Dkt. #67, at 1; Dkt. #68, at 1-16).  Specifically, on June 10, 2011, plaintiff took its Rule 30(b)(6) deposition of defendant, through its designee, Daniel Moriarty, who unequivocally testified that on Friday, October 24, 2008, the EFIS wall popped free of its connection to the Roof 6 roof desk, creating a gap in the roof, which he personally observed "towards the end of the

---

[1] The following five exhibits are attached to plaintiff's brief: excerpts from the deposition of Daniel Moriarty, taken on June 10, 2011 ["Moriarty Depo."](Exh. 1); copy of expert report of Marc Caputo, dated September 2, 2011 ["Caputo Report"](Exh. 2); excerpts from the deposition of Marc Caputo, taken on September 27, 2011 ["Caputo Depo."](Exh. 3); copy of expert report of Thomas Olam, dated November 3, 2011 ["Olam Report"](Exh. 4); and excerpts from the deposition of Thomas Olam, taken on January 10, 2012 ["Olam Depo."](Exh. 5).

[2] The following four exhibits are attached: copy of defendant's Notice of Deposition for Caputo, dated September 19, 2011 (Exh. 1); additional excerpts from the Caputo Deposition (Exh. 2); copy of defendant's Rule 26(a)(2) Expert Disclosure, dated November 3, 2011, with attachments (Exh. 3); and additional experts from the Moriarty Deposition (Exh. 4).

[3] The following three exhibits are attached: additional excerpts from the Moriarty Deposition (Exh. 1); another copy of the Caputo Report (Exh. 2); and additional excerpts from the Olam Deposition (Exh. 3).

day[,]" but that defendant took no effort to "seal up the gap between the roof and the [EFIS] wall" for two reasons, including that "[t]here was no bad weather forecast." (Dkt. #68, at 4-5 & Moriarty Depo. at 78-79, 108-09, 113-14, 115).

Plaintiff's expert witness, Marc Caputo, explicitly relied on Moriarty's testimony, in forming his expert opinion in his report, dated September 2, 2011, and in his deposition testimony, given on September 27, 2011, that "the massive water entry problems into the Shubert Theater were caused by [defendant's] failure to provide proper temporary tie-ins at the south perimeter edge of Roof 6 [and] [s]pecifically they failed to seal the gap that formed between the Roof 6 deck and the EFIS wall assembly . . . ." (Dkt. #68, at 5-6; Caputo Report at 9; Caputo Depo. at 115). A rain storm occurred in Southern Connecticut overnight on Saturday-Sunday, October 25-26, 2008. (Dkt. #68, at 4).

On November 3, 2011, almost five months after the Rule 30(b)(6) deposition, defendant disclosed the expert report of Thomas Olam, who opined that contrary to Moriarty's testimony, that the EFIS wall detached either during or after the storm due to the strong winds, but not before it; his deposition testimony on January 10, 2012 was consistent with his report. (Dkt. #68, at 6; Olam Report at 2; Olam Depo. at 67, 83). Olam discounted Moriarty's testimony, because Moriarty "does have the ability sometimes to speak without thinking[,]" Olam did not review the photographs provided to him until the weekend before his deposition, and he never visited the site because he thought there was a possibility that the case would settle. (Dkt. #68, at 6-7; Olam Depo. at 17, 44-45, 67, 87).[4] At his

---

[4] Olam testified that he intended to visit the site after his deposition. (Dkt. #68, at 10, n.6 & Olam Depo. at 106).

deposition, plaintiff contends that Olam also identified four other possible sources of water infiltration not disclosed in his expert report – flashing at the base of the EFIS wall, existing flashing at a pitch pocket, vertical joints in the EFIS wall, and the top edge of the EFIS wall – but that he had not "reached a final conclusion about the source of all the leakage." (Dkt. #68, at 7-8, 14 & Olam Depo. at 45, 82).

Plaintiff objects to a "trial by ambush" in defendant changing the substantial nature of the case so close to trial in that Olam's expert opinion directly contradicts Moriarty's testimony at a Rule 30(b)(6) deposition that the EFIS wall detached on October 24, 2008. (Dkt. #68, at 8-10). Plaintiff asserts that because it was "undisputed" that the wall detached on October 24, it did not need to depose the other members of defendant's crew who had witnessed the EFIS wall detachment that day. (Id. at 10). Plaintiff further argues that if defendant later determined that Moriarty "was somehow repeatedly mistaken in his Rule 30(b)(6) account of the movement of the EFIS wall," then it had a duty to so notify plaintiff of this error well before it disclosed Olam's report some five months later. (Id.). Plaintiff further contends that any conclusion that the EFIS wall detached after October 24, 2008 is "unfounded[,]" and is based, to a large extent, on Olam's "subjective observation" about Moriarty's inability to filter his thoughts before speaking. (Id. at 10-13).

Plaintiff further objects to having Olam's opinion being "a work in progress" as to other potential sources of water infiltration not disclosed in his expert report despite an imminent trial date, and thus should not be presented to the jury under FED. R. CIV. P 37(c)(1). (Dkt. #68, at 13-14 & Olam Depo. at 106). In addition, at his deposition on January 10, 2012, Olam testified as to his intention to reach a "final conclusion about the

source of all the leakage[]" after he visited the Shubert Theater. (Dkt. #68, at 14-16).

In its brief in opposition, defendant asserts that on September 19, 2011, just seventeen days after plaintiff disclosed Caputo as its expert witness, defendant served its Notice of Deposition, requesting five categories of documents. (Dkt. #71, at 2-3 & Exh. A). When Caputo was deposed eight days later, on September 27, 2011, Caputo gave his entire file to plaintiff's counsel, who, in turn, agreed to provide copies to defense counsel. (Dkt. #71, at 3 & Caputo Depo. at 149-50).[5] According to defense counsel, he reminded plaintiff's counsel of this commitment four additional times, on October 17 and 28, and November 1 and 4, 2011. (Dkt. #71, at 3). On November 3, 2011, Olam disclosed his expert report, but with the caveat that his opinion would be supplemented upon receipt of Caputo's documentation. (Id.). Six days thereafter, on November 9, 2011, defense counsel again requested this file, which he received two days later, on November 11, 2011; five days thereafter, once defense counsel had an opportunity to review the materials, he forwarded them to Olam. (Id. at 3-4). The parties were unable to complete Olam's deposition before the discovery deadline of December 15, 2011 previously set by Judge Arterton (see Dkt. #18), and agreed between themselves that the deposition could be held on January 10, 2012. (Dkt. #71, at 4).[6] Thus, defendant argues that Olam should not be precluded regarding additional opinions after his November 3, 2011 expert report because plaintiff was responsible for the delay, especially because plaintiff failed to depose him prior to the

---

[5]Plaintiff's counsel disagrees with this recitation, representing instead that Caputo indicated at his deposition that he wanted to retain custody of his file and offered to make a copy of his file for defendant, but then later it turned out that plaintiff's counsel needed to make the copies instead. (Dkt. #73, at 6, n.4).

[6]The controversy here typifies the perils counsel run when they alter a scheduling order carefully crafted by a judge, which scheduling order provides appropriate time in which to remedy glitches like this one, such as by a holding a supplemental deposition.

December 15, 2011 discovery deadline. (Id. at 4-8). According to defendant, this testimony is "critical to . . . [d]efendant's contest of liability in this case[,]" and plaintiff incurs "no prejudice from any claimed late disclosure." (Id. at 8-10). Defendant further argues that Olam is not precluded from disagreeing with Moriarty's testimony during the Rule 30(b)(6) deposition, which is not a judicial admission, particularly when Moriarty was deposed just eight months after this lawsuit was filed. (Id. at 10-15).

In its reply brief, plaintiff argues that defendant should be estopped from contradicting Moriarty's "multiple affirmations" in which he served as defendant's Rule 30(b)(6) corporate representative, upon which plaintiff and Caputo relied. (Dkt. #73, at 1-5). Plaintiff further replies that Olam should be precluded from testifying as to potential sources of water infiltration, along with any other opinions and observations not disclosed in his expert report, and in particular, opinions formed after his deposition, especially when Caputo's expert file "consisted almost entirely of documents and photographs that were already in [defendant's] possession since September 2, 2011[,]" except for one set of color photographs sent by plaintiff's counsel on November 10, 2011, two months prior to Olam's deposition. (Id. at 5-7). Plaintiff argues that it will suffer "significant prejudice" if Olam testifies as to new opinions formed after his inspection of the premises, in that "there is inadequate time for the parties to re[-]engage in expert discovery." (Id. at 8-9).[7]

### A. RULE 30(b)(6) CONSIDERATIONS

In the context of summary judgment motions, a corporate party is "preclud[ed]" from introducing an affidavit of an employee that introduces "a theory of the facts that differs from that articulated by the designated representatives[]" in a Rule 30(b)(6) deposition, because

---

[7]See note 6 supra.

to permit the consideration of such an affidavit would be inconsistent "with both the letter and spirit of Rule 30(b)(6)." Rainey v. Am. Forest & Paper Ass'n, Inc., 26 F. Supp. 2d 82, 94 (D.D.C. 1998).  The "plain[]" language of Rule 30(b)(6) "makes clear that a designee is not simply testifying about matters within his or her own personal knowledge, but rather is speaking for the corporation about matters to which the corporation has reasonable access." Id. (internal quotations & citations omitted).  As such,

> By commissioning the designee as the voice of the corporation, the Rule obligates a corporate party to prepare its designee to be able to give binding answers in its behalf.  Unless it can prove that the information was not known or was inaccessible, a corporation cannot later proffer new or different allegations that could have been made at the time of the [Rule] 30(b)(6) deposition.

Id. (internal quotations & citations omitted).   An "eleventh hour alteration" that "works a substantial revision of defendant's legal and factual position[]" "is inconsistent with Rule 30(b)(6), and is precluded by it[,]" because "the Rule aims to prevent a corporate defendant from thwarting inquiries during discovery, then staging an ambush during a later phase of the case." Id. at 95 (citation omitted).[8]

In contrast, defendant argues that the Rainey ruling has been criticized by several other courts, see, e.g., A.I. Credit Corp. v. Legion Ins. Co., 265 F.3d 630, 637 (7th Cir. 2001)

---

[8]As previously noted, see note 6 supra, there is insufficient time for plaintiff to depose employees of defendant to determine if their testimony differs from that of the defendant's principal, who himself visited the site during the afternoon of Friday, October 24, 2008.  Even if time permitted these depositions, however, the Rainey decision explicitly rejected supplemental depositions as a "cure for this violation":

> If such were the remedy, corporate parties would have every incentive to "bandy" or attempt "trial by ambush," as the only downside to their strategy would be that their adversary might eventually procure access to their theretofore-concealed witness.  This incentive structure would eviscerate the force of Rule 30(b)(6), and would delay litigation, heighten suspicions, and obfuscate the discovery process.  Rule 30(b)(6) was designed to prevent such consequences . . . .

Id. at 96.

7

(citations omitted), which have held instead that Rule 30(b)(6)does not "absolutely bind[] a corporate party to its designee's recollection unless the corporation shows that contrary information was not known to it or was inaccessible." Id.

The Second Circuit has held that testimony at depositions constitutes "'evidentiary admissions' that should be submitted to the jury for consideration, rather than 'judicial admissions' that act as concessions and remove a fact from contention." Weiss v. Union Central Life Ins. Co., 28 Fed. Appx. 87, 89 (2d Cir. 2002)(citation omitted). Defendant has cited to several cases that have held that "while Rule 30(b)(6) testimony is binding, it does not constitute a judicial admission that ultimately decides on issues. It can be contradicted and used for impeachment purposes." (Dkt. #71, at 12-13 & n.4 (internal quotations omitted), citing, inter alia, A&E Prods. Group, L.P. v. Mainetti USA, Inc., No. 01 CV 10890, 2004 WL 345841, at *7 (S.D.N.Y. Feb. 25, 2004)(regarding summary judgment motion)).[9] According to defendant, "[p]laintiff is of course entitled to cross-examine and impeach . . .

---

[9] It is worth noting that there has been a judicial admission as to this fact. On December 23, 2011, Alterra Excess & Surplus Ins. Co. commenced a declaratory judgment action against Summit and Great American, 11 CV 2001 (MRK). In its complaint, Alterra, which is Summit's insurer (Complaint, ¶¶ 1-2, 13), specifically alleges:

> 17. When Summit (specifically, Dan Moriarty's crew) demolished roof #6, a section of the EFIS wall had been pulled or pushed away from the structure leaving a 3 inch gap for water to enter. . . .
>
> 18. On Friday, October 24, 2008, Dan Moriarty (of Summit) looked at various internet weather services late in the afternoon. Although a rain event was forecasted, . . . Moriarty determined that it was only predicted to "mist[,]" and therefore, took no special or extra precautions to guard against a storm of greater magnitude. Summit attempted to address the 3 inch gap of the EFIS wall by placing Tyvek paper sheeting as a temporary weekend measure. . . . Moriarty left the property around 4:00 p.m. on Friday, October 24, 2008.

(emphasis added). Thus, defendant's insurer concedes in its Complaint that the popping of the EFIS wall occurred sometime on Friday, October 24, 2008, and not during the storm on Saturday-Sunday, October 25-26, 2008.

Moriarty at trial on [his] previous Rule 30(b)(6) testimony, but . . . [p]laintiff cannot seek to preclude . . . [d]efendant from presenting contradictory testimony." (Dkt. #71, at 13). Defense counsel acknowledges that "[w]hile certainly presenting an expert who has contrary opinions to the party is an unenviable position, such discrepancy goes to the weight of the opinion, not the admissibility." (Id. at 15).

In Pedroza v. Lomas Auto Mall, Inc., No. CIV. 07-0591 (JB/RHS), 2009 WL 1325440, at *8 (D.N.M. Apr. 6, 2009), a corporate defendant indicated that it might need to substitute its representative at trial because Sharon Kunz, its corporate designee at its Rule 30(b)(6) deposition, was seriously ill; in their motion in limine, plaintiffs asked the Court to prevent the new representative from contradicting Kunz's earlier deposition testimony. The district judge rejected the Rainey approach, adopting the "majority" opinion that Rule 30(b)(6) testimony is "like other testimony[]" that can be "controverted or explained by the party":

> Rule 30(b)(6) requires organizations to designate representatives to speak for them. Absent [R]ule 30(b)(6), organizations would have no voice, being legal abstractions, or else speak in a cacophony of disparate statements, given the many people that make up most organizations. Nothing in [R]ule 30(b)(6)'s language, however, indicates that, aside from officially speaking for the organization, the representative's testimony is somehow treated differently than others' testimony. Any fact witness may say one thing at a deposition and another at trial. If [R]ule 30(b)(6) meant for corporate representatives to be treated differently than other witnesses, presumably the rule would have said so. . . . Should [this defendant] end up with a new representative and should have representative's testimony begin to veer away from what Kunz said, . . . [p]laintiffs have the means to impeach the new representative. This safeguard is sufficient.

Id. at *8 (footnote omitted). The court concluded that this corporate defendant "will have to live with the consequences of two witnesses telling two different stories." Id. at *9. See also L-3 Commc'ns Corp. v. OSI Sys., Inc., No. 02 Civ. 9144 (PAC), 2006 WL 988143, at *9 (S.D.N.Y. Apr. 13, 2006).

9

The unique circumstances of this case compel the stricter application of Rule 30(b)(6), as asserted in Rainey, than the more flexible approach, as set forth in A&E Prods. Group and the majority line of decisions. First and foremost, defendant is the classic "mom and pop" operation – there is no one in a better position to "bind" Summit than its "principal operator," Daniel Moriarty. (See Dkt. #69, at 4). Of the twelve potential defense witnesses listed in the Joint Pretrial Memorandum, filed January 27, 2012 (Dkt. #69, at 4-6), only Moriarty is in a position to make "admissions" on defendant's behalf under FED. R. EVID. 802(d)(2); the other Summit employees include its foreman for the project, one roofer, one roofer journeyman, and five roofer apprentices. This was not an instance, for example, where several high level executives, any of whom could bind the corporate party, attended a lengthy conference during which the key events leading to the litigation were addressed; in such a circumstance, it would be expected that the other attendees might well have recollections that varied, in at least some respects, from the testimony of the Rule 30(b)(6) designee. In the words of the Pedroza decision, without Rule 30(b)(6), a corporation would "speak in a cacophony of disparate statements, given the many people that make up most organizations." Pedroza, 2009 WL 1325440, at *8. Here, Moriarty is the driving force, and the only driving force, behind Summit. Plaintiff had no reason to seek the depositions of defendant's foreman on the job, or any of the seven subordinate employees, when Moriarty had testified unequivocally that the EFIS wall had "popped" on Friday, October 24, 2008.[10]

Second, and equally important, the multiple other cases cited by defendant (Dkt. #71, at 11-13 & n.4), all concern divergent renditions by fact witnesses. Not one of them raised

---

[10] Defense counsel is correct that plaintiff could have served Requests for Admission upon defendant (Dkt. #71, at 14), but it was also reasonable for plaintiff to rely on Moriarty's definitive, and until recently, unopposed testimony.

the unusual circumstance raised here – that defendant's expert witness will be contradicting and criticizing defendant's key factual witness as to a critical matter for which the key factual witness had personal knowledge that the expert witness did not, and based upon purely subjective feelings of the expert witness about the capabilities of the key factual witness. See Section I.B. infra.

Defendant is correct that Moriarty did not witness the EFIS wall "popping" from the original masonry wall, which occurred after he had made his morning visit to the site on Friday, October 24, 2008. (Dkt. #71, at 14 & Moriarty Depo. at 114). However, he witnessed, with his own eyes, "towards the end of the day[,]" during his afternoon visit that same day,

that the EFIS wall had "popped free of its connection to the Roof 6 roof desk, creating a gap in the roof." (Dkt. #68, at 4-5; Moriarty Depo. at 78-79, 108-09, 113-15; Dkt. #73, at 4). Moreover, even had Moriarty not visited the site in the afternoon that day, as a Rule 30(b)(6) designee for his company, he was entitled to rely upon the reports of his employees who did witness the incident. (Dkt. #73, at 4).

B.  "FACTUAL DISCONNECT" BETWEEN DEFENDANT'S AND OLAM'S TESTIMONY

As the United States Supreme Court held in Brooke Group, Ltd. v. Brown & Williamson Tobacco Corp., 509 U.S. 209, 242 (1993), in affirming a trial judge's having set aside a jury verdict, "When an expert opinion is not supported by sufficient fact to validate it in the eyes of the law, or when indisputable record facts contradict, or otherwise render the opinion unreasonable, it cannot support a jury's verdict." (citation omitted).  The Second Circuit similarly has ruled that "expert testimony should be excluded if it is speculative or conjectural, or it if is based on assumptions that are so unrealistic and contradictory as to suggest bad

faith or to be in essence an apples and oranges comparison. . . ." Boucher v. U.S. Suzuki Motor Corp., 73 F.3d 18, 21 (2d Cir. 1996)(internal quotations & citations omitted).

A case closely parallel to this one is Barrett v. Black & Decker (U.S.) Inc., No. 06 Civ. 1970 (SCR)(MDF), 2008 WL 5170200 (S.D.N.Y. Dec. 9, 2008), a product liability action, in which plaintiff's expert, in rendering his expert opinion, relied upon events which varied from those testified to by plaintiff at his deposition as to how the accident occurred. Id. at *3-4. Among the reasons defendant sought to exclude this expert from testifying was that "his opinions are without factual foundation and contradict [p]laintiff's testimony." Id. at *6. The district court agreed:

> By contradicting [p]laintiff's testimony about how the accident occurred, [the expert] is seeking to provide his own version of an accident he did not witness. . . . As such, the undisputed factual disconnect between [the expert's] and [p]laintiff's versions of the accident at issue is reason enough to preclude [the expert's] expert testimony.

Id. at *8 (citation omitted). See also Davidov v. Louisville Ladder Group, LLC, No. 02 Civ. 6652 (LLS), 2005 WL 486734, at *2 (S.D.N.Y. Nov. 1, 2005)("[A]n expert's opinion which is not based on the evidence in the case is little more than speculation and it cannot be the basis of a verdict in conflict with the uncontradicted evidence in the case."), aff'd, 169 Fed. Appx. 661 (2d Cir. 2006).

As Olam testified, the sole basis upon which he discounted Moriarty's testimony as to the timing of the detachment was his belief that Moriarty was not "paying enough attention to make that statement accurately[,]" and that Moriarty "does have the ability sometimes to speak without thinking." (Dkt. #68, at 12 & Olam Depo. at 67, 87). Olam had limited familiarity with Moriarty, having met him about twenty years earlier and having had no recent contact with him since then. (Dkt. #68, at 12 & Olam Depo. at 87). His tangential exposure

to Moriarty is insufficient, in and of itself, to disregard his repetitive, and otherwise uncontroverted, testimony that the EFIS wall popped sometime during the day on Friday, October 24, 2008.

As in Barrett, there is an "undisputed factual disconnect" between Olam's and Moriarty's versions of the timing of the EFIS wall popping, which is "reason enough to preclude [Olam's] expert testimony." Barrett, 2008 WL 5170200, at *8 (citation omitted).

As plaintiff emphasized in its reply brief, this motion seeks only "to preclude . . . Olam from testifying to any date other than October 24, 2008, as the date on which the EFIS wall 'popped,' moved, or detached[,]" and "not the effects of that movement." (Dkt. #73).

C. OTHER OPINIONS NOT DISCLOSED IN OLAM'S EXPERT REPORT

An expert report must contain "a complete statement of all opinions the witness will express and the basis and reasons for them . . ." and an expert witness has an affirmative duty to supplement his or her report "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing . . . ." FED. R. CIV. P. 26(a)(2)(B)(I)(emphasis added) & 26(e)(1)(A), (2). "If a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless. . . ." FED. R. CIV. P. 37(c)(1). "Rule 37(c)(1)'s preclusionary sanction is automatic absent a determination of either substantial justification or harmlessness." Innis Arden Golf Club v. Pitney Bowes, Inc., 3:06 CV 1352 (JBA), 2009 WL 5873112, at *2 (D. Conn. Feb. 23, 2009)(internal quotations & citation omitted). As one district judge observed last year, "experts are not free to continually

bolster, strengthen, or improve their reports by endlessly researching the issue they already opined upon, or to continually supplement their opinions." Cedar Petrochemicals, Inc. v. Dongbu Hannong Chem. Co., 769 F. Supp. 2d 269, 278 (S.D.N.Y. 2011)(internal quotations & citation omitted). This concern is particularly paramount where, like here, the new matters not previously disclosed in expert reports are raised after the close of discovery and after a trial date has been set. Point Prods. A.G. v. Sony Music Entm't, Inc., 93 Civ. 4001, 2004 WL 345551, at *7-13 (S.D.N.Y. Feb. 23, 2004).

Plaintiff complains that Olam's "opinion is a work in progress" despite the imminent approach of trial, in that Olam expressed his intention to visit the Shubert Theater, after the deposition if the case did not settle, in order to make a "determination of the correlation between the point of entry and the damage." (Dkt. #68, at 14-15).

Defendant argues that there was "substantial justification" under Rule 37(c)(1) due to plaintiff's delay in providing materials from Caputo's file to Olam, which was aggravated by plaintiff's further delay in scheduling Olam's deposition. (Dkt. #71, at 2-10). In its reply brief, however, plaintiff has responded that "Caputo's expert file consisted almost entirely of documents and photographs that were already in Summit's possession since September 2, 2011[,]" and that of the approximately sixteen categories of document upon which Caputo relied in forming his expert opinions, defendant was only missing only one set of color copies of photographs that Caputo had taken in spring 2009, copies of which were forwarded to defense counsel on November 11, 2011. (Dkt. #73, at 6 & Caputo Report at 1-3). Plaintiff's counsel described these photographs "of limited value," and no different from what Olam would have observed if he had made his own inspection of the Shubert Theater. (Dkt. #73, at 6). In addition, plaintiff appropriately argues that the delay in scheduling Olam's

deposition gave Olam two additional months (from November 2011 to January 2012) to prepare a supplemental report before he was deposed, if the additional photographs altered his opinion, had he chosen to review them prior to the weekend before his deposition. (Dkt. #68, at 7; Olam Depo. at 44-45; Dkt. #73, at 6-7).

Similarly, defendant cannot argue that these supplemental opinions are "harmless" under Rule 37(c). Defendant is correct that in his November 3, 2011 expert report, Olam identified three "other potential sources of water entry[,]" none of which were defendant's responsibility: the vertical joint between the EFIS wall and adjoining brick masonry, an open joint between the duct work and EFIS change in elevation wall, and openings in the flexible duct connector(s). (Dkt. #71, at 8-10 & Olam Report, at 3, ¶ 4). However, at his deposition, Olam identified four possible sources of water infiltration – flashing at the base of the EFIS wall, existing flashing at a pitch pocket, vertical joints in the EFIS wall, and the top edge of the EFIS wall – but that he had not "reached a final conclusion about the source of all the leakage." (Dkt. #68, at 7-8, 14 & Olam Depo. at 45, 82; see also Dkt. #73, at 7-9). To the extent that any of four possible sources differ from the three explicitly mentioned in Olam's November 3, 2011 expert report, he is precluded to testifying about them. In addition, Olam is precluded from testifying as to any new opinions he forms from any post-deposition visit to the Shubert Theater.[11]

---

[11]Both parties refer to the four-part test in Haas v. Del. & Hudson Ry. Co., 282 Fed. Appx. 84 (2d Cir. 2008), when considering whether to exclude evidence under Rule 37(c)(1). See also Softel, Inc. v. Dragon Med. & Scientific Comm., Inc., 118 F.3d 955, 961 (2d Cir. 1997), cert. denied, 523 U.S. 1020 (1998). These four factors are: "(1) the party's explanation for the failure to comply with the [disclosure requirement]; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." 282 Fed. Appx. at 86 (citation omitted).

The first and third factors parallel the substantial justification and harmlessness language found in Rule 37(c)(1). Neither side seeks a continuance here (Dkt. #71, at 10; Dkt. #73, at 9), so

II. CONCLUSION

Accordingly, for the reasons stated above, defendant's Motion In Limine to Preclude Defendant from Introducing Any Evidence Contradicting Its Testimony that the EFIS Wall Detached on October 24, 2008, and Defendant's Expert, Thomas Olam, from Testifying to Potential Sources of Water Infiltration, Along with Any Other Opinions and Observations Not Disclosed in his Expert Report (Dkt. #67) is granted in large part.

Dated at New Haven, Connecticut, this 13th day of February, 2012.

    /s/ Joan G. Margolis, USMJ
Joan Glazer Margolis
United States Magistrate Judge

---

the fourth factor has no significance. As to the second element, defendant understandably argues that Olam's testimony is "critical to . . . [d]efendant's contest of liability in this action[,]" in that it is "critical" to have Olam "testify regarding any deficiencies" in Caputo's expert opinions. (Dkt. #71, at 8). However, as plaintiff emphasizes in its reply brief, it "does not request that . . . Olam be precluded as to all of his opinions, only those that he failed to disclose prior to his deposition." (Dkt. #73, at 7).

Therefore, the balancing test under Haas does not change the conclusion reached here. See Innis Arden, 2009 WL 5863112, at *2, n.5.