IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

```
-----------------------------------------------------x
                                                     :
GREAT AMERICAN INSURANCE COMPANY                     :    3:10 CV 1669 (JGM)
OF NY a/s/o The Connecticut Association              :
for the Performing Arts, Inc.,                       :
                                                     :
v.                                                   :
                                                     :
SUMMIT EXTERIOR WORKS, LLC                           :    DATE: FEBRUARY 27, 2012
                                                     :
-----------------------------------------------------x
```

RULING REGARDING PLAINTIFF'S SUBSTITUTE EXHIBIT 5

The procedural history behind this ruling is set forth in this Magistrate Judge's Order Under Rule 201(e) of the Federal Rules of Evidence, filed February 23, 2012 (Dkt. #87)["Order"]. In accordance with the Order, the next day, defendant filed its Memorandum in Opposition to the Introduction of Plaintiff's Exh. 5 (Dkt. #88), and plaintiff filed its Memorandum in Support of the Admissibility of Plaintiff's Proposed Exhibit 5 (Dkt. #89).[1]

In its brief in opposition, defendant argues that while courts frequently take judicial notice of "specific facts" that appear in governmental weather records (such as the maximum temperature during a discrete time period or the time of sunset), an expert witness is necessary to address any "inferences to be drawn from those facts." (Dkt. #88, at 1-2)(citations omitted). Defendant does not contest that there was rain and wind on October 25, 2008, but rather objects to plaintiff's introducing Exh. 5 regarding "the relative strength and severity" of that storm in relation to storms that occurred in the New Haven area for the previous twenty-one months. (Id. at 3).[2] As defendant explains, Exh. 5 only indicates that

---

[1] Attached is a substituted Exh. 5, which only shows the daily precipitation at Tweed-New Haven Airport from January 1, 2007 through December, 31, 2008.

[2] Defendant refers to eighteen previous months, but the twelve months of 2007 and the first nine months of 2008 (January to September) result in twenty-one previous months.

.72 inches of rain fell on October 25, 2008, but not the rainfall on an hourly basis; for example, a storm in which .72 inches of rain fell within one hour "is potentially more destructive" than a storm in which .72 inches of rain over the course of an entire day. (Id.).[3]

In contrast, plaintiff argues that judicial notice should be taken of the daily precipitation totals in the New Haven area of 2007-08 under FED. R. EVID. 201 (Dkt. #89, at 1-3), and the NOAA report is relevant because it demonstrates that from January 1, 2007 through October 24, 2008, there were thirty-four storms that exceeded .72 inches of rain (id. at 4).[4]

The parties do not dispute that the Court may take judicial notice of the fact that there was no rain on Friday, October 24, 2008, and that there was .72 inches of rain on October 25, 2008. (Dkt. #89, Substitute Exh. 5). As stated in the Order, the law is abundantly clear that under FED. R. EVID. 201, a court may take judicial notice of "specific facts" found in governmental weather reports, such as precipitation for a discrete period of time, temperature range, wind direction, and time of sunset. See, e.g., Heilman v. Lyons, No. 2:09-cv-2721 JAM KJN P, 2012 WL 371600, at *8 (E.D. Cal. Feb. 3, 2012)(footnote & citation omitted)(in addressing plaintiff-inmate's claims that defendants were deliberately indifferent to conditions of excessive heat exposure for July 1-4, 2007, the court took judicial

---

[3]Defendant also addresses the columns regarding wind and "[s]ignificant [w]eather" conditions, but those columns have been eliminated in plaintiff's Substitute Exh. 5. (Dkt. #89, Exh. A).

[4]Defendant does not question that these governmental weather reports are self-authenticating under FED. R. EVID. 902(5)(Dkt. #88, at 1; see Dkt. #89, at 4-5), nor does it appear to contest that these reports are not hearsay under FED. R. EVID. 803(8)(B). (See Dkt. #89, at 5-6).

Defendant similarly has not argued, to date, that the distance between Tweed-New Haven Airport and the Shubert Theater, which is less than five miles, is too great to be relevant. (See id. at 2, n.2 & multiple citations).

notice of historical weather records for the zip code in which the facility he was housed is located); Sadler v. Michigan Dept. of Corr., Civ. Action No. 09-11375, 2011 WL 2462028, at *7 (E.D. Mich. Apr. 21, 2011)(defendant relied on weather reports from National Climate Data Center to show temperature for one month period of time at issue, and court took judicial notice of NOAA's Heat Index Chart reflecting how hot it really feels when relative humidity is factored with the actual air temperature); Pryor v. City of Chicago, No. 07 C 2479, 2010 WL 431470, at *2 & n. 1 (N.D. Ill. Feb. 1, 2010)(court took judicial notice of time of sunset, according to NOAA Sunset Calculator); Doran v. Contoocook Valley Sch. Dist., 616 F. Supp. 2d 184, 194 & n. 8 (D.N.H. 2009)(after taking judicial notice of high temperature on June 7, 2007, as recorded by NOAA, court rejects contention of plaintiff's children that they were "traumatized" by having to spend a free period outside where some suffered sunburns); Pate v. Norris, No. 4:05 CV 00491(GH-JFF), 2007 WL 990698, at *19 & n. 10 (E.D. Ark. Mar. 29, 2007)(in habeas petition, in which petitioner asserted that a strong wind on the day in question would have carried a "strong" chemical order, the court took judicial notice of wind direction from NOAA report); Allen v. Ashcroft, Civil No. 03-441-MJR, 2006 WL 1882672, at *6 (S.D. Ill. July 7, 2006)(taking judicial notice of the historical weather records of Marion, Illinois, reflecting the low temperatures for the period of September 29 through October 11, 2002); Chubb & Son, Inc. v. Kelleher, No. 92 CV 4484(CBA), 95 CV 0951(CBA), 2006 WL 2711543, at *4, n.2 (E.D.N.Y. Sept. 21, 2006)(taking judicial notice of the records of the NOAA reflecting that Hurricane Wilma did not strike a certain region in Florida until October 23, 2005); Freeman v. Berge, No. 03-C-0021-C, 2003 WL 23272395, at *13 (W.D. Wis. Dec. 17, 2003)(inmate-plaintiff not permitted to testify as to the temperature in his cell, but court took judicial notice of record from National Climatic Data Center reflecting that the

temperature in Boscobel, Wisconsin, in July-August 2000 only exceeded 90 degrees once).

As plaintiff also correctly points out, courts can also take judicial notice of weather trends in their area, such as a dry spell or humidity.  See, e.g., Rio Grande Silvery Minnow v. Keys, 469 F. Supp. 2d 973, 988 & n.12 (D.N.M.)(in administrative appeal filed by non-profit environmental and conservation organizations from decision of the Fish and Wildlife Service, court took judicial notice of the "very dry year" experienced in the Rio Grande watershed that year, due to "an abnormally small amount of precipitation this winter and spring[,]" and further relying on governmental website to that effect), appeal dismissed on other grounds, 46 Fed. Appx. 929 (10th Cir. 2002); Barroll v. United States, 135 F. Supp. 441, 445 (D. Md. 1955)(in Federal Torts Claim Act for alleged damage to plaintiff's home from firing of cannon at nearby Aberdeen Proving Ground, the court took "judicial notice of the fact that the climate on the Eastern Shore, like that of the eastern seaboard generally, is quite humid from time to time.").

Both parties similarly agree that the weather facts sought here are not as extensive as those in Buckley Towers Condominium, Inc. v. QBE Ins. Corp., No. 07-22988-CIV, 2008 WL 5505415, at * 4 (S.D. Fla. Oct. 21, 2008), where the court rejected plaintiff's effort to have the court take judicial notice of the entire 2005 Annual Summary of the Atlantic Hurricane season, which included all hurricanes and tropical depressions over the Atlantic ocean in 2005, their synoptic histories, meteorological statistics, and damage and casualty analysis; the court found most of the data included far more information than the category of the hurricane, its wind speed and location, it was not clear what "adjudicative fact[,]" which is "simply the facts of the particular case[,]" plaintiff sought to have the court take judicial notice of, and in light of the wealth of information in the report, plaintiff would need

to lay the proper foundation or make a sufficient showing. (multiple citations omitted).  (See Dkt. #88, at 2; Dkt. #89, at 3).

Defendant argues that plaintiff is soliciting testimony that requires "extrapolation" from the NOAA reports, which requires expert testimony to interpret these weather reports. (Dkt. #88, at 3).[5]  See Richards v. Pathmark Stores, Inc., No. 07 Civ. 1790(THK), 2008 WL 3165582, at *5 (S.D.N.Y. Aug. 6, 2008)(in a slip and fall case, plaintiff, through expert witness, provided NOAA data showing weather conditions for the week of plaintiff's fall; court took judicial notice of the data, and considered expert testimony that the temperature of the concrete was likely colder than the ambient air temperature).  While defendant is correct that the rate at which rain falls can have an impact of the "destructive[ness]" of a storm, which information is absent from plaintiff's Substitute Exh. 5, the larger concern to the Court is the relevance of twenty-one months of historical weather data prior to the October 24-25, 2008 incident.  A heavy rainstorm of 1.12 inches on March 16, 2007, for example, has no bearing on the condition of the roof on October 25, 2008, some nineteen months later.  The ability of the roof at the Shubert Theater to withstand a downpour more than one-and-one-half years earlier is simply irrelevant to the issue of causation here, that is, whether there were alternative locations through which water infiltrated the building other than the area around the EIFS wall or the scuppers.  (See Dkt. #76, ¶¶ 6(a)-(c)).

The more appropriate time frame is from April 1, 2008 through October 24, 2008,

---

[5]As previously indicated, plaintiff has revised Exh. 5, so that the pages only contain the precipitation amounts.  See notes 1 & 3 supra.  As such, they will not be confusing to the jury.  See United States v. Nero, 733 F.2d 1197, 1204 (7th Cir. 1984)(in upholding trial court's denial of criminal defendant's motion for a new trial due to newly discovered evidence, regarding, inter alia, defendant's mistaken belief that he had to switch airports because one airport was "fogged in[,]" defendant failed "to provide expert clarification" of the weather reports, which were "merely rows of numbers which without expert clarification or explanation are incomprehensible.").

slightly more than six months, and which constitutes the spring, summer and autumn seasons, when precipitation is far more likely to be all rain, rather than snow, sleet, or freezing rain.[6]  Sheri Kaplan, the general manager of the Shubert Theater, can testify as a lay witness as to her recall of any rain storms from April 1, 2008 through October 24, 2008, and whether there was any water infiltration to the interior of the theater during this time period.  See Hardiman v. Stevens, No. 8:09-cv-2110-T-33AEP, 2011 WL 1480401, at *3 n.3 (M.D. Fla. Apr. 19, 2011)(it is "appropriate" for a lay witness to testify under FED. R. EVID. 701 as to "weather conditions on the date of the accident.").  Defense counsel is free, of course, to cross-examine Kaplan on any gaps in her knowledge of meteorology, as a lay person, regarding the intensity of these rainfalls, such as the rate at which the rain occurred or the angle at which the wind fell on the building.

Accordingly, the court may take judicial notice of the ten rain storms that exceeded 0.72 inches in the New Haven area from April 1, 2008 through October 25, 2008, as set forth in plaintiff's Substitute Exh. 5.[7]

Dated at New Haven, Connecticut, this 27th day of February, 2012.

    /s/ Joan G. Margolis, USMJ
Joan Glazer Margolis
United States Magistrate Judge

---

[6] According to Substitute Exh. 5, 2.17 inches of precipitation fell on April 28, 0.83 inches fell on May 9, 0.95 inches on June 14, 2.05 inches fell on July 24, 0.97 inches on July 27, 0.90 inches on August 2, 3.31 inches on September 6, 0.75 inches on September 12, and 1.99 inches on September 26, 2008.

[7] See note 6 supra.  Counsel and the Court will confer prior to Kaplan's testimony as to the procedures that will be followed prior to plaintiff's introduction of Substitute Exh. 5.